13-2930-cr
*United States v. Dantzler*

# In the
# United States Court of Appeals
# For the Second Circuit

————

AUGUST TERM 2013
No. 13-2930-cr

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

ZEPHANIAH DANTZLER,
*Defendant-Appellant,*

————

Appeal from the United States District Court
for the Eastern District of New York.
No. 12 CR 568-1 (NGG) — Nicholas G. Garaufis, *Judge.*

————

SUBMITTED: JUNE 27, 2014
DECIDED: NOVEMBER 14, 2014

————

Before: CABRANES, CARNEY, and DRONEY, *Circuit Judges.*

————

The Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), imposes a 15-year mandatory minimum sentence on violators who have three previous convictions for a violent felony or a serious drug offense "committed on occasions different from one another." The question presented is whether, in determining whether crimes

were committed "on occasions different from one another," a court at sentencing is limited to examining only materials approved by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13, 16 (2005).

We hold that, in determining whether crimes were committed "on occasions different from one another" for purposes of applying the ACCA, a court is limited to examining only materials approved by the Supreme Court in *Taylor* and *Shepard*. We also hold that a court may not rely upon a Presentence Report ("PSR") in determining whether crimes were committed "on occasions different from one another" for purposes of applying the ACCA, where the relevant facts described in the PSR were not derived from sources determined to be consistent with *Taylor* and *Shepard*.

Accordingly, we **VACATE** the sentence of the United States District Court for the Eastern District of New York (Nicholas G. Garaufis, *Judge*) and **REMAND** for resentencing in accordance with this opinion.

————

DAVID A. LEWIS, Federal Defenders of New York, Inc., New York, NY, *for Appellant Zephaniah Dantzler*.

JO ANN M. NAVICKAS (Kevin M. Trowel, *on the brief*), Assistant United States Attorneys, for Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Appellee United States of America*.

————

JOSÉ A. CABRANES, *Circuit Judge*:

The Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), imposes a 15-year mandatory minimum sentence on violators who have three previous convictions for a violent felony or a serious drug offense "committed on occasions different from one another." The question presented is whether, in determining whether crimes were committed "on occasions different from one another," a court at sentencing is limited to examining only materials approved by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13, 16 (2005).

We hold that, in determining whether crimes were committed "on occasions different from one another" for purposes of applying the ACCA, a court is limited to examining only materials approved by the Supreme Court in *Taylor* and *Shepard*. We also hold that a court may not rely upon a Presentence Report ("PSR") in determining whether crimes were committed "on occasions different from one another" for purposes of applying the ACCA, where the relevant facts described in the PSR were not derived from sources determined to be consistent with *Taylor* and *Shepard*.

Accordingly, we **VACATE** the sentence of the District Court and **REMAND** for resentencing in accordance with this opinion.

## BACKGROUND

Defendant-appellant Zephaniah Dantzler ("Dantzler") was convicted, in the United States District Court for the Eastern District of New York (Nicholas G. Garaufis, *Judge*), upon his plea of guilty, of one count of possession of a firearm as a felon in violation of 18 U.S.C. § 922(g)(1).

At Dantzler's plea colloquy in the District Court, the Government stated that it would seek to prove at trial that he had been previously convicted of three violent felonies committed on three different occasions, as required by the ACCA, 18 U.S.C. § 924(e), and Dantzler expressly waived the right to a jury trial on the issue of his "prior felony convictions." Appellant's App. 33. Section 924(e)(1) states, in relevant part, that "[i]n the case of a person who violates [the substantive provision] of this title and has three previous convictions by any court . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years." 18 U.S.C. § 924(e)(1).

The PSR prepared for sentencing found that, in 2006, at the age of 18, Dantzler had been convicted of three robberies that rendered him an armed career criminal subject to a mandatory minimum sentence of 15 years' imprisonment pursuant to the ACCA. The three predicate convictions described in the PSR were as follows: (1) a conviction in the New York State Supreme Court in Brooklyn for a robbery committed on February 18, 2006 in Brooklyn,

at 11:00 a.m., in which Dantzler and a co-defendant stole a debit card from the victim using a box cutter; (2) a conviction in the New York State Supreme Court in Manhattan for a robbery committed on the subway in Manhattan on February 19, 2006, together with two co-defendants, using a box cutter and a bladed knife; and (3) a conviction in the New York State Supreme Court in Queens for a robbery also committed on February 19, 2006, on the subway in Queens, with two unnamed individuals, using a box cutter and a bladed knife. Dantzler was arrested for the February 19, 2006 subway robbery that took place in Manhattan on the day it occurred. While under pretrial detention at the correctional facility on Rikers Island, New York, Dantzler was arrested on March 2, 2006 for the February 19, 2006 robbery that took place in Queens. While still in custody, he was arrested on August 17, 2006 for the February 18, 2006 robbery that took place in Brooklyn.

In a letter addressed to Judge Garaufis, dated July 16, 2013, counsel for Dantzler objected to the PSR's characterization of the second and third offenses as crimes committed "on occasions different from one another," and argued that the two February 19, 2006 robberies "represent *a single criminal episode*." Appellant's App. 83 (emphasis supplied). The letter also provided the following additional information, which was not included in the PSR, taken from the New York criminal complaints, which were attached:

> In Mr. Dantzler's case, he was arrested on February 19, 2006 at 3:30 a.m. at the Manhattan City Hall subway station for a robbery that took place on a number 6

subway train about 10 minutes earlier. While he was in
pretrial detention for that offense, he was arrested at
Rikers Island on March 2, 2006, for another robbery that
also took place on February 19, 2006, at 1:45 a.m. on an
eastbound number 7 train in Queens. . . . Although the
offenses involved different victims, both robberies were
committed by Mr. Dantzler and the same two co-
defendants, both robberies took place in the New York
City subway system, and both robberies took place
approximately an hour and a half apart. As noted in the
Presentence Report, the modus operandi was the same for
both robberies. There also does not appear to have been
any interruption in the criminal activity the three
undertook for the night.

Appellant's App. 83-84. The Government responded in a letter dated
July 23, 2013. Both letters relied upon the case of *United States v.
Rideout*, 3 F.3d 32 (2d Cir. 1993). In *Rideout*, we were faced with the
same question—whether two offenses, which formed two of the
three predicates required for consideration as an armed career
criminal under the ACCA, occurred on separate occasions. In that
case, we concluded that "offenses committed against different
victims separated by at least twenty to thirty minutes and twelve to
thirteen miles qualify as offenses 'committed on occasions different
from one another.'" *Id*. at 35 (quoting the ACCA, § 924(e)).

At the sentencing hearing on July 25, 2013, Judge Garaufis, an
experienced and careful adjudicator, began by noting the materials
he reviewed for purposes of sentencing: the original PSR and two
addenda to the PSR, the second of which responded to Dantzler's

objections in his July 16, 2013 letter to Judge Garaufis and its three attachments, one of which included the New York criminal complaints sworn to by attesting police officers for the two February 19, 2006 subway robberies; a July 16, 2013 letter of the defense to the probation officer objecting to the PSR and attaching the same New York criminal complaints; and the Government's July 23, 2013 response letter with three exhibits attached. Dantzler raised no objection to the Court's consideration of any of these materials. During her statement at sentencing, Dantzler's counsel reiterated many of the facts contained in Dantzler's sentencing submission.

Agreeing with the Government that *Rideout* was "on all fours" with the facts before it, the District Court first held that, pursuant to *Rideout*'s teaching, Dantzler's offenses were committed "on occasions different from one another" such that the ACCA was triggered. Appellant's App. 44. The District Court then stated that the applicable Sentencing Guidelines range for Dantzler's offense was 168 to 210 months, but was subject to the ACCA statutory minimum of 180 months. The District Court then sentenced him, principally, to 180 months' imprisonment and 5 years of supervised release. Had Dantzler not been subject to a Guidelines enhancement as an armed career criminal under § 924(e), his total offense level would have been 23, rather than 30 under the ACCA, *see* PSR ¶ 17, which would have made the applicable sentencing range 92-115 months' imprisonment.

This timely appeal followed.

## DISCUSSION

On appeal, Dantzler argues that, in determining whether crimes were committed "on occasions different from one another" for purposes of applying the ACCA, a court is limited to examining only sources approved by the Supreme Court in *Shepard v. United States*, 544 U.S. 13, 16 (2005)—namely, the charging document, written plea agreement, transcript of plea colloquy, or analogous materials. Because the District Court's conclusion in this case rested upon sources not allowable under *Shepard*, and, Dantzler asserts, without those inappropriate sources there was insufficient proof that his convictions occurred on "occasions different from one another," he argues that his sentence should be vacated and the case remanded for resentencing based solely upon *Shepard*-approved sources.

Dantzler concedes that he did not raise this claim in the District Court, and accordingly, we review for plain error. "This standard is met when '(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Vilar*, 729 F.3d 62, 70 (2d Cir. 2013) (quoting *United States v. Marcus*, 560 U.S. 258 (2010)).

## A.

Dantzler argues that two decisions of the Supreme Court establish considerable restrictions on the materials that a sentencing court may consider in determining whether three predicate offenses under the ACCA were committed "on occasions different from one another." In *Taylor v. United States*, 495 U.S. 575, 577-79 (1990), the defendant challenged the sentencing court's determination that two of his predicate offenses for burglary under Missouri law constituted "violent felonies" for purposes of the ACCA. Taylor argued that he would have committed a "violent felony" for purposes of the ACCA only if he had committed "generic burglary" of a building or dwelling. The Missouri statute, however, criminalized a significantly broader range of activity, including the "non-generic" burglarizing of boats, tents, and other non-buildings. *Id*. at 599.

The question before the Supreme Court was "whether the sentencing court in applying § 924(e) must look only to the statutory definitions of the prior offenses, or whether the court may consider other evidence concerning the defendant's prior crimes." *Id.* at 600. The Court rejected an approach that required the sentencing court "to engage in an elaborate factfinding process regarding the defendant's prior offenses," *id*. at 601, and instead held that, in determining whether a prior conviction was for a "violent felony" under the ACCA, a sentencing court should look only to: (1) the fact of conviction; (2) the statutory definition of the prior offense; and, in cases where the defendant was convicted by a jury, to (3) the

criminal indictment or information, together with (4) the jury instructions. *Id.* at 602.

In a later case, *Shepard v. United States*, the Supreme Court was faced with the question of how to apply *Taylor* when the predicate offenses for sentencing under the ACCA stemmed from a guilty plea rather than a jury verdict. 544 U.S. 13, 19 (2005). The predicate offenses at issue there, as in *Taylor*, were for burglary in a state where the burglary statute encompassed both "generic" and "non-generic" burglary, and the sentencing court was required to determine if Shepard's burglary convictions were "violent felon[ies]" under the ACCA. *Id.* at 15-16. In particular, the *Shepard* Court addressed whether a sentencing court could look to police reports or complaint applications in determining whether Shepard's guilty pleas for burglary had been based upon conduct that would constitute "generic burglary," in which case they could be properly considered as ACCA predicate offenses. *Id.* at 16.

The *Shepard* Court first held, as a threshold matter, that "guilty pleas may establish ACCA predicate offenses." *Id.* at 19. It then concluded that "a later court determining the character of an admitted burglary [for purposes of sentencing under the ACCA] is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Id.* at 16. This was based upon the same "pragmatic" concerns expressed in *Taylor*, namely, a sentencing court's need to identify ACCA predicate offenses while "avoid[ing] subsequent

evidentiary enquiries into the factual basis for the earlier conviction." *Id.* at 20.

Justice Souter, writing for a plurality of the *Shepard* Court,[1] also placed the decision within the line of cases preceding *Shepard* that greatly diminished the scope of a court's factfinding authority at sentencing. *Id.* at 24. He noted that the Court's opinion in *Taylor* "anticipated the very rule later imposed for the sake of preserving the Sixth Amendment right, that any fact other than a prior conviction sufficient to raise the limit of the possible federal sentence must be found by a jury, in the absence of any waiver of rights by the defendant." *Shepard*, 544 U.S. at 24 (referring to the rule announced by *Jones v. United States*, 526 U.S. 227 (1999), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000)). The Court explicitly excluded from this limitation the fact of a defendant's prior conviction, pursuant to its earlier decision in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998). More recently, in *Alleyne v. United States*, the Court held that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." 133 S. Ct. 2151, 2155 (2013).

---

[1] Justice Souter authored the Court's opinion with respect to its primary holding that, for purposes of sentencing under the ACCA, a court is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented. However, Justice Souter's discussion contextualizing the holding within the Court's recent sentencing jurisprudence, described above, was written only on behalf of a plurality of the Court.

Case 13-2930, Document 55-1, 11/14/2014, 1369497, Page 12 of 26

**B.**

Dantzler's primary argument on appeal is that the *Shepard* limitations on sources to be consulted in determining the character of an offense should also apply to district court inquiries into whether crimes were committed "on occasions different from one another." We agree. Although *Taylor* and *Shepard* involved the question of whether predicate offenses under the ACCA were "violent felonies," the reasoning underlying those decisions applies with equal force to the analysis of whether the offenses were committed "on occasions different from one another." 18 U.S.C. § 924(e)(1).

First, as a matter of statutory interpretation, there is nothing in the statute's construction to suggest that Congress intended to limit the "violent felony" inquiry for predicate offenses, but *not* to limit a court's inquiry with respect to whether offenses were committed on "occasions different from one another." Nor is there any indication by the Court in *Shepard* that its conclusion was informed by a unique characteristic of the "violent felony" analysis that would not apply to the parallel "on occasions different from one another" inquiry.

Furthermore, the majority in *Shepard* reiterated its commitment, first expressed in *Taylor*, to "respect[ ] Congress's adoption of a categorical criterion that avoids subsequent evidentiary enquiries into the factual basis for the earlier conviction." 544 U.S. at 20. The Court in *Taylor* explicitly determined that, in enacting the ACCA, Congress had not meant "to adopt an

Case 13-2930, Document 55-1, 11/14/2014, 1369497, Page 13 of 26

approach that would require the sentencing court to engage in an elaborate factfinding process regarding the defendant's prior offenses." 495 U.S. at 601. Indeed, "the *Shepard* Court was apparently concerned about the prospect of a sentencing court making *any* factual finding not necessarily implied by the prior conviction—irrespective of how clearly the factual finding was established." *United States v. Rosa*, 507 F.3d 142, 153 (2d Cir. 2007). The *Shepard* Court explicitly rejected the Government's desire for a "wider evidentiary cast" that would include police reports and "documents submitted to lower courts even prior to charges." 544 U.S. at 21.

The same concerns expressed by the Court in *Shepard* with regard to "violent felonies" are implicated when the inquiry concerns the separateness of the predicate crimes. Indeed, these concerns are perhaps even more salient here because the facts relied upon in determining whether offenses are committed on "different occasions"—the date, time, victim identity, or location of the offense—are rarely elements required for conviction, and hence, might not be included in jury instructions or placed before the court (much less admitted by a defendant) during a plea colloquy. Absent reliance on *Taylor-* or *Shepard*-approved sources, such as a charging paper,[2] jury instruction, or plea colloquy, a sentencing judge would

---

[2] We note that, although *Shepard* used the words "charging documents" in listing materials acceptable for a sentencing court to rely upon, 544 U.S. at 16, in this Circuit, a document's mere characterization as a "charging document" does not end the inquiry. For example, where the predicate offense is a state offense to which the defendant pleaded guilty, the defendant may not have specifically admitted all of the factual

necessarily have to reconstruct the conduct underlying a conviction, which might require in-depth examination of the trial record for each predicate offense, or a similarly broad evidentiary inquiry that *Taylor* and *Shepard* have decidedly foreclosed. *See, e.g., Taylor*, 495 U.S. at 601.

Additionally, limiting the "on occasions different from one another" analysis to *Taylor* and *Shepard* materials avoids potential constitutional problems associated with affording broad factfinding powers to a sentencing court in evaluating ACCA predicate offenses. In *Shepard*, the plurality noted:

> [T]he dispute raises the concern underlying *Jones* and *Apprendi*: the Sixth and Fourteenth Amendments guarantee a jury standing between a defendant and the power of the State, and they guarantee a jury's finding of any disputed fact essential to increase the ceiling of a potential sentence. . . . The rule of reading statutes to avoid serious risks of unconstitutionality therefore counsels us to limit the scope of judicial factfinding on the disputed generic character of a prior plea, just as *Taylor* constrained judicial findings about the generic implication of a jury's verdict.

544 U.S. at 25-26 (internal citation omitted).

---

allegations contained in a "charging document" such as a Bill of Particulars. *See Rosa*, 507 F.3d at 155 ("[W]e do not think that every document properly classified as a charging document in a state case to which a defendant pleads guilty is *ipso facto* probative on the issue of whether the defendant necessarily pleaded guilty to" the facts therein.).

Indeed, our precedent makes clear that a sentencing judge's determination of whether ACCA predicate offenses were committed "on occasions different from one another" is no different, as a constitutional matter, from determining the *fact* of those convictions. In *United States v. Santiago*, the defendant argued that, pursuant to *Apprendi*, any fact relevant to imposition of the ACCA mandatory minimum—namely, convictions for three violent felonies or drug offenses committed on occasions different from one another—must be charged in the indictment and found by a jury in order to be considered by a sentencing court. 268 F.3d 151, 153 (2d Cir. 2001). He also tried to distinguish the fact of conviction from the "different occasions" analysis, arguing that, even if a sentencing judge could permissibly determine the fact of conviction, a jury must decide the "different occasions" question. We rejected that argument, holding that "the separateness of the convictions is not a fact which is different in kind from the types of facts already left to the sentencing judge by *Almendarez-Torres* and *Apprendi* . . . . In short, we read *Apprendi* as leaving to the judge, consistent with due process, the task of finding not only the mere fact of previous convictions but other related issues as well." *Id*. at 156.

In other words, we held in *Santiago* that the question of the separateness of predicate offenses is intertwined with the fact of conviction, and because a sentencing judge was authorized to find the fact of conviction under *Almendarez-Torres* and *Apprendi*, he could also find that such convictions were separate. Here, we take the logical next step and hold that because, after *Shepard*, the fact

that a crime constituted a "violent felony" may be established only through *Shepard*-approved materials, so too the question of whether the convictions were for three separate offenses may also be answered by looking only to *Shepard*-approved materials.

Accordingly, we hold that, in determining whether offenses were committed "on occasions different from one another" for purposes of sentencing under the ACCA, a sentencing court is bound by the source limitations established by *Taylor* and *Shepard*.[3]

---

[3] This holding is consistent with that of many of our sister Circuits. *See, e.g.*, *United States v. Boykin*, 669 F.3d 467, 470-71 (4th Cir. 2012) (finding plain error in the district court's "reli[ance] on the PSR's factual details of Boykin's 1980 shootings to make the judicial finding that the two shootings occurred on separate occasions for ACCA purposes" because "there is no indication in the PSR itself that the information therein came from *Shepard*-approved sources," and "the factual details of the encounter are not typically found in *Shepard*-approved sources"); *United States v. Sneed*, 600 F.3d 1326, 1332 (11th Cir. 2010) ("Based on *Shepard*, there is simply no distinction left between the scope of permissible evidence that can be used to determine if the prior convictions are violent felonies or serious drug offenses or if they were committed on different occasions under § 924(e)(1)."); *United States v. Thomas*, 572 F.3d 945, 950 (D.C. Cir. 2009) ("[T]he district court erred in concluding the Government presented insufficient evidence that the two predicate drug offenses were 'committed on occasions different from one another' [because] [t]he two indictments offered in the second sentencing satisfied the evidentiary requirements set out in *Taylor* and *Shepard*." (internal citation omitted)); *United States v. Fuller*, 453 F.3d 274, 279 (5th Cir. 2006) ("To determine whether two offenses occurred on different occasions, a court is permitted to examine only the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." (internal quotation marks omitted)); *United States v. Ngo*, 406 F.3d 839, 843 (7th Cir. 2005) ("The finding that [defendant's] crimes were not consolidated falls within the narrow parameters permitted by *Shepard*, i.e., those findings that can be made by resorting only to information with the conclusive significance of a prior judicial record." (internal quotation marks omitted)); *United States v. Taylor*, 413 F.3d 1146, 1157 (10th Cir. 2005) (remanding for resentencing because the court could not "determine whether the district court reviewed judicial records consistent with *Shepard*" in conducting the "occasions different" analysis).

In so holding, we acknowledge that, for what is likely a relatively small number of cases, such as the one before us, in which the dates of the predicate offenses are not dispositive in determining whether they were committed "on occasions different from one another," the sentencing court's ability to impose the ACCA mandatory minimum will depend upon whether the *Taylor-* and *Shepard*-approved materials also contain other facts necessary for such a determination. Here, where two of the predicate offenses occurred on the same date, the District Judge was compelled to look to facts such as the identities of the victims and the times and locations of the offenses—which, under our clear precedent in *Rideout* are precisely the factors rightly considered—in determining whether the crimes occurred on "occasions different from one another." In such a case, it is only if these particular facts are included in *Taylor-* and *Shepard*-approved materials that a sentencing judge can make the requisite determination. And, as we have held with regard to the determination of whether predicate offenses were "violent felonies," "if such [*Shepard*-approved] evidence is not available, then the government has not met its burden" of establishing the predicate crimes for the purpose of sentencing under the ACCA. *Rosa*, 507 F.3d at 153.

Our acknowledgment echoes the concern animating Justice O'Connor's dissent in *Shepard*, in which she noted that "[a] defendant's sentence will now depend . . . on whether those States' record retention policies happen to preserve the musty written plea agreements and recordings of 'plea colloquies' ancillary to long-past

convictions." *Shepard*, 544 U.S. at 36-37 (O'Connor, J., dissenting) (alterations and internal quotation marks omitted). But we are bound by the Court's opinions in *Taylor* and *Shepard* regarding the sources that may be consulted for purposes of sentencing under the ACCA, even if it is unclear whether, in the narrow array of cases that would require a more in-depth factual inquiry, those sources will contain the requisite information.[4]

## C.

Having established that, in determining whether offenses were committed "on occasions different from one another" for purposes of sentencing under the ACCA, a court may only utilize

---

[4] For example, the Seventh Circuit faced such a circumstance in *Kirkland v. United States*, where the sentencing court consulted only *Shepard*-approved materials—"the charging documents, the judgments, and the plea questionnaires"—to determine whether a robbery and burglary that occurred on the same date were indeed separate offenses for purposes of the ACCA. 687 F.3d 878, 881 (7th Cir. 2012). The Court of Appeals noted generally that, "in practice, this means that if the *Shepard*-approved documents before a district court are equivocal as to whether the offenses occurred on the same occasion, the ACCA does not apply." *Id.* at 889. And indeed, the Court concluded that the case before it was one of the "exceptional cases," *id.* at 891, in which "'the factually sparse' record sheds little light on whether the 1985 offenses occurred on the same occasion" and therefore those convictions could not support a sentence imposed under the ACCA, *id.* at 887. *See also Fuller*, 453 F.3d at 279-80 (vacating defendant's sentence with regard to the ACCA enhancement, for which two predicate offenses occurred on the same day, because, "[b]ased on the indictments alone . . . we cannot determine as a matter of law that the burglaries occurred on different occasions" and "the record does not contain the written plea agreement, the plea colloquy, or other *Shepard*-approved material that might resolve this question").

sources consistent with *Taylor* and *Shepard*, we now turn to our consideration of Dantzler's particular sentence.[5]

There does not appear to be any dispute that the District Court relied upon materials that were not of the type specifically condoned by *Taylor* or *Shepard* in making its determination that Dantzler's two February 19, 2006 subway robbery convictions were committed "on occasions different from one another" for purposes of the ACCA. As we held above, this reliance was error.

The error was also plain. The District Court underscored its reliance on the PSR, which, when discussing Dantzler's previous offenses, explicitly drew upon "[c]ourt records," "parole records," "local presentence report[s]," and "arrest report[s]," PSR ¶¶ 23-25.[6] The District Court also clearly relied upon Dantzler's sentencing

---

[5] The Government argues that Dantzler has waived the challenge we consider here, as his counsel relied upon the PSR and criminal complaints in making its argument to the District Court. However, this argument was not waived. The Supreme Court has described waiver as the "intentional relinquishment or abandonment of a known right," *United States v. Olano,* 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938)), and courts applying waiver doctrine have focused on strategic, deliberate decisions that litigants consciously make. Here, there is nothing in the record suggesting that this was a strategic, calculated decision by Dantzler to introduce facts taken from the complaints and PSR, and then when it backfired, to seek to "undo" that decision. The applicability of *Shepard* was never mentioned in the District Court, nor was there any discussion of proper and improper materials for the Court to consult; there is no indication that either side invoked *Shepard*'s implications in this context, and accordingly, we cannot conclude that Dantzler waived this argument.

[6] We have previously held that state PSRs are not necessarily consistent with *Taylor* and *Shepard,* and the relevant inquiry is whether the facts contained in the state PSR were "explicitly adopted by the trial judge" or assented to by the defendant when pleading guilty. *Rosa,* 507 F.3d at 157 & n.13.

submission, which both discussed and attached the New York criminal complaints sworn to by attesting police officers, as did the Government's submission in response. Reference to these materials was not specifically condoned by the Court in *Taylor* or *Shepard*, and there is no suggestion that these materials were themselves derived from materials approved by *Taylor* or *Shepard* or that they are analogs of the types of materials approved by *Taylor* or *Shepard*.

Our conclusion that the District Court's reliance on materials not permitted by *Taylor* and *Shepard* was plain error is intentionally a limited one. In so holding, we intimate no view as to the applicability of *Taylor* and *Shepard* to cases in which a sentencing court relied upon a PSR that was derived in whole, or in large part, from *Taylor*- or *Shepard*-approved materials. For example, another Court of Appeals has held that a "trial judge was entitled to rely upon the PSR" where it "b[ore] the earmarks of derivation from *Shepard*-approved sources such as the indictments and state-court judgments from his prior convictions." *United States v. Thompson*, 421 F.3d 278, 285 (4th Cir. 2005).[7]

Relatedly, we recognize the possibility that some of the materials provided as part of the parties' sentencing submissions or incorporated into the PSR, which referenced *inter alia* certain unidentified "court records," may in fact be considered analogous to

---

[7] In *Thompson*, the Fourth Circuit also appeared to rely in part on the fact that the defendant lodged no objection to use of the PSR, *see* 421 F.3d at 285, but, as discussed below, we accord less weight to that circumstance.

those approved by *Taylor* and *Shepard* or may be otherwise consistent with *Taylor* and *Shepard*. At present, we are not in a position to decide this issue definitively because neither party has presented this argument on appeal, nor is the record sufficient for us to determine whether the documents were permissible pursuant to *Taylor* and *Shepard*.[8] Accordingly, we leave this question to the determination in the first instance by the District Court on remand, and emphasize that this opinion should not be construed as foreclosing an argument by the Government that some of the materials already in the record are in fact consistent with the limitations of *Taylor* and *Shepard*. Any such determination must be guided by the Supreme Court's limitation of reference materials to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or . . . some comparable judicial record of this information," *Shepard*, 544 U.S. at 26—or, in other words, "conclusive records made or used in adjudicating guilt," *id.* at 21. By contrast, reliance on materials akin to police reports and "documents submitted to lower courts even prior to charges" has already been explicitly proscribed by the Supreme Court. *Id.* at 21-23. Even though we do not reach the question of whether *all* of the materials relied upon by the District Court in this instance were impermissible, there is no doubt that at

---

[8] As discussed above, the Government chose instead to present arguments that *Taylor* and *Shepard* do not apply to the determination of whether predicate offenses were committed on separate occasions, and that Dantzler waived this argument by providing the District Court with some of these materials, both of which we have rejected here.

least some of those materials fall outside the limited set sanctioned by *Taylor* and *Shepard*, and therefore the District Court's use thereof constitutes plain error.

This error also affected Dantzler's substantial rights. The District Court explicitly derived from these non-*Shepard* approved materials the facts it used to determine that the two February 19, 2006 robberies were committed "on occasions different from one another," for the purposes of the ACCA. Judge Garaufis stated at sentencing, "[i]f [Dantzler] had gone from car to car of the No. 6 train and robbed a bunch of people, all right, that I could consider [ ] one incident but he decided to travel on different subway lines at different times the same night and that's really the problem is that [*Rideout*] seems to tie my hands." Appellant's App. 44-45. This factual determination in turn triggered the enhancement in Dantzler's applicable Guidelines imprisonment range from 92-115 months to 168-210 months, as well as the 15-year (180-month) mandatory minimum sentence under the ACCA. Judge Garaufis acknowledged the severity of the enhanced ACCA sentence, noting "I'm not enthusiastic about this construction, all right? Personally, in the interest of justice. But . . . I'm compelled to follow *Rideout* . . . ." *Id*. at 46.

Finally, the error affects the fairness, integrity, or public reputation of judicial proceedings within the meaning of the Supreme Court's plain error jurisprudence. As the Fourth Circuit has held in a similar circumstance, "[s]uch improper factfinding as occurred here strikes at the core of our judicial system's protections

for criminal defendants." *Boykin*, 669 F.3d at 472. Holding otherwise would allow to stand a 15-year sentence—predicated on error—that far exceeds the 115-month maximum sentence that would otherwise have been recommended by the Guidelines.

The error is not mitigated, as the Government contends, by Dantzler's having invoked the very facts relied upon by the District Court in defendant's submission to the Court in advance of sentencing. In *United States v. Reyes*, the PSR identified the defendant as a career offender under United States Sentencing Guidelines § 4B1.1 based upon its determination that he had several convictions "involving a crime of violence and a controlled substance offense." 691 F.3d 453, 455 (2d Cir. 2012). The defendant did not object to any of the facts in the PSR, including its description of the conduct that resulted in his conviction for one of the predicate offenses; moreover, defense counsel in *Reyes* affirmatively represented at the sentencing hearing that the defense had "no objections to the facts or the Guidelines calculations" stated in the PSR. *Id.* at 456 (internal alterations omitted). In the absence of any objection, Reyes was sentenced in accordance with the enhancement for career offenders. *Id*.

On appeal in *Reyes*, we were faced with the question of whether "the district court was [ ] entitled to rely on the PSR's uncontested description of [defendant's] pre-arrest conduct that resulted in his conviction for battery of a law enforcement officer to determine whether the battery was a 'crime of violence'" for sentencing purposes. *Id*. at 456. Relying on *Shepard*, we held that "a

sentencing court may *not* rely on a PSR's description of a defendant's pre-arrest conduct that resulted in a prior conviction to determine that the prior offense constitutes a 'crime of violence' under U.S.S.G. § 4B1.2(a)(1),[9] even where the defendant does not object to the PSR's description," and that doing so was plain error. *Id*. at 459 (emphasis supplied).

We are persuaded that a similar holding applies here, even where Dantzler not only failed to object to the facts in the PSR, but supplemented them by providing the New York criminal complaints, and relied upon them in his sentencing argument. In *Reyes*, we reasoned that defendant's failure to object did not cure the Government's failure to submit the proper evidence, nor did it render the PSR's description more reliable in establishing the requisite ACCA predicate. *Id.* at 458-60. The same is true here. The absence of an objection will not relieve the Government of its burden of proving through *Taylor*- and *Shepard*-approved sources that the ACCA enhancement applies.

Accordingly, because there is no suggestion that the materials relied upon by the District Court at sentencing were of the type approved by *Taylor* or *Shepard*, it was plain error for the District Court to have relied upon them in making its determination that Dantzler's two February 19, 2006 robbery convictions occurred "on occasions different from one another," and we are thus required to

---

[9] Although *Reyes* involved an enhancement under the Sentencing Guidelines rather than the ACCA, its reliance on *Shepard*, *Taylor*, and *Rosa*, all ACCA cases, make it applicable to the instant case.

remand for resentencing. Upon remand, if the Government renews its request to the District Court that it apply the mandatory minimum sentence prescribed by the ACCA, it must submit materials consistent with *Taylor* and *Shepard* to demonstrate that Dantzler's two robbery convictions were committed on separate occasions.

## CONCLUSION

To summarize, we hold that:

(1) In determining whether crimes were committed "on occasions different from one another" for purposes of applying the ACCA, a court is limited to examining only the types of materials approved by the Supreme Court in *Taylor v. United States*, 495 U.S. 575, 577-79 (1990), and *Shepard v. United States*, 544 U.S. 13, 16 (2005).

(2) For cases in which the dates of the predicate offenses do not conclusively support a determination that they were committed "on occasions different from one another," the sentencing court's ability to impose the ACCA mandatory minimum will depend upon whether the *Taylor-* and *Shepard-* approved materials contain other facts necessary for such a decision.

(3) In determining that ACCA predicate offenses were committed on separate occasions, it is plain error for the sentencing court to draw relevant facts from materials that were neither

condoned by the Court in *Taylor* or *Shepard* nor determined to be either derived from approved materials or analogs of approved materials.

(4) Where the relevant facts described in a PSR were not derived from sources consistent with *Taylor* and *Shepard*, a sentencing court may not rely upon the PSR in determining whether crimes were committed "on occasions different from one another," even where a defendant does not object to the PSR's factual content about the ACCA predicate offenses, or relies upon such facts in his submissions and argument to the sentencing court.

For the reasons set out above, we **VACATE** the sentence and **REMAND** to the District Court for resentencing in accordance with this opinion.